UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00258-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| PIOTR BABICHENKO, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant Piotr Babichenko's Motion to Dismiss all charges against him in the Superseding Indictment. Dkt. 477. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

Defendant Piotr Babichenko is one of multiple defendants indicted for an alleged decade-long scheme of selling counterfeit cell phones and laundering the proceeds. *See* Dkt. 1; Dkt. 210. Issues of evidence and privileged material have been contested throughout this criminal proceeding. In April 2019, the Court addressed one of these issues by assigning a filter team to sort potentially

**MEMORANDUM DECISION AND ORDER - 1**

privileged material from the prosecution. The privileged information at issue in the present motion is eight emails sent between Piotr and his prior counsel, Solomon Abady, found on Device 59158-9-1. Piotr retained Abady during an administrative proceeding in a Customs and Border Protection seizure. In conducting a search of the device, FBI investigator Mike Douglas tagged 143 emails as relevant, including the 8 emails at issue here. The government contends Douglas did not discuss this privileged information with other agents or the prosecution, nor did anyone else read the substance of the emails. *See* Dkt. 506-2; Dkt. 506-3, Dkt. 506-4, Dkt. 506-5.

In January 2020, Piotr asserted the device contained privileged information. Dkt. 477-4. The Government then halted all review of this device and required the prosecution team to delete or turn over any copies to the filter team. Dkt. 477-5. One business day after the filing of the present motion, the Government removed Douglas from the prosecution team. Dkt. 506-8. The filter team then confirmed the eight emails were privileged communications between Piotr and his prior civil counsel. Dkt. 506-9.

In the present motion, the Defendant argues the Court should dismiss all charges against him because the Government's viewing of privileged communications irreparably violates his Fifth and Sixth Amendment rights. Dkt.

**MEMORANDUM DECISION AND ORDER - 2**

477. Alternatively, the Defendant requests further discovery of the Government's

violation, or suppression of all CBP evidence. *Id.*

## LEGAL STANDARD

### A.  Sixth Amendment Right to Counsel

The purpose of the Sixth Amendment is "to assure fairness in the adversary

criminal process." *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir.

2003), as amended (May 19, 2003). The Sixth Amendment right to counsel

attaches when a prosecution is commenced, either by way of formal charge,

preliminary hearing, indictment, information, or arraignment. *McNeil v.*

*Wisconsin*, 501 U.S. 171, 175 (1991). At that point, a defendant has a right to rely

on counsel "as a medium between himself and the government." *Danielson*, 325

F.3d at 1054.

Government invasion of a defendant's attorney-client privilege alone is a not

a Sixth Amendment violation. *United States v. Morrison*, 449 U.S. 361, 365

(1981). The Ninth Circuit has established that, "[s]tanding alone, the attorney-

client privilege is merely a rule of evidence; it has not yet been held a

constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985).

However, the invasion violates the Sixth Amendment if it substantially prejudices

the defendant. *Partington v. Gedan*, 961 F.2d 852 (9th Cir. 1992). Prejudice

results "when evidence gained through the interference is used against the defendant at trial," when the prosecution uses "confidential information pertaining to the defense plans and strategy," when the government intrusion "destroys the defendant's confidence in his attorney," or from "other actions designed to give the prosecution an unfair advantage at trial." *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980).

**B.    Fifth Amendment Right to Due Process**

A court may dismiss an indictment under one of two theories: (1) on the ground of outrageous government conduct that rises to the level of a due process violation; or (2) under its supervisory powers even if the conduct does not amount to a due process violation. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991).

## ANALYSIS

In arguing for dismissal, the Defendant makes two arguments: (1) the Government's viewing of the eight emails violates his Sixth Amendment rights, and (2) the Government's repeated viewing of privileged information violates his due process rights under the Fifth Amendment. *See* Dkt. 477.

**A.    Sixth Amendment Violation**

When the prosecution incidentally obtains evidence, such as an inculpatory statement, the defendant bears the burden of showing prejudice. *Danielson*, 325

F.3d at 1070. However, if the government impermissibly obtains information about the defendant's trial strategy, the defendant must first prove the government's invasion was deliberate and intentional. *Id.* at 1054, 1073–74. Then, the burden shifts to the government to prove non-use of the privileged information. *Id.* In *Danielson*, the Ninth Circuit held the government's intrusion was deliberate and intentional because the prosecutor, though he warned the informant not to report on the defendant's trial strategy, made no attempt to insulate the agents leading the investigation and failed to instruct them to avoid privileged information. *Id.* at 1059–66. Further, the prosecutor received unredacted copies of transcripts containing privileged information. *Id.*

### 1.      Intentional Intrusion

The Government's intrusion into the Defendant's attorney-client privilege was not deliberate or intentional. Unlike in *Danielson*, where the prosecution failed to insulate himself and the investigative agents from privileged material, here the prosecution used a filter team, ordered the agents to delete all copies of the device, and walled Douglas off from the prosecution team. Dkt. 506-2; Dkt. 506-3; Dkt. 506-4; Dkt. 506-5. The Defendant argues that the Government intentionally seized the privileged material because they reviewed the device while knowing it contained privileged emails. For support, the Defendant notes that the Government

initiated the CPB proceedings, and therefore knew the name of the Defendant's attorney in that matter. By reviewing emails sent by that attorney, the Government intentionally reviewed privileged material. However, the Defendant presents no evidence that the Government knew these privileged emails would be on this particular device. Moreover, the Defendant fails to show that Douglas, the only member of the prosecution team to have reviewed the emails, knew about or had any relation to the CPB proceeding. Further, these arguments do not prove the prosecution crafted the search with the intention of obtaining privileged information. See *Cooper v. Mayfi*, 2008 WL 608336 at \*13 (N.D. Cal. 2008) (holding the government did not affirmatively act to intrude into the attorney-client privilege by seizing privileged documents from the defendant's jail cell because there was no evidence the prosecution conducted the search to deliberately obtain the defense's strategy and the prosecutor filed a declaration stating he had not seen the material).

The Defendant places heavy emphasis on the Fourth Circuit's finding in *United States v. Under Seal (In re Search Warrant Issued June 13, 2019)*, 942 F.3d 159 (4th Cir. 2019). This case dealt with the issue of irreparable harm in the context of injunctive relief regarding a filter team's review of privileged information. *Id.* at 164. Though this case emphasizes the potential severity of harm

**MEMORANDUM DECISION AND ORDER - 6**

caused by an invasion of the attorney-client privilege, the Ninth Circuit framework requires the Defendant to show the Government's intrusion into the privileged information was intentional, not that it caused irreparable harm. See *Danielson*, 325 F.2d at 1073-74. The Defendant fails to make this showing.

### 2.    Government's Non-Use

Further, even if the Defendant could prove the Government intentionally intruded on privileged information, the Government has established the non-use of that information. To prove non-use of privileged information, the mere assertion of the government's "integrity and good faith" is not enough. *Id.* at 1072. Rather, they must show by a preponderance of the evidence that all of their trial strategy is "derived from legitimate independent sources." *Id.* (quoting *Kastigar v. United States*, 406 U.S. 441, 460 (1972)). If the government fails to meet this burden, the defendant has suffered prejudice. *Danielson*, 325 F.3d at 1072. The government can avoid having to meet this heavy burden by insulating the prosecution team from privileged information through filtering evidence, immediately segregating and sealing privileged information, and only reviewing redacted documents. *Id.*

Here, the remaining members of the prosecution team who had access to the device at issue filed declarations testifying that they did not view or recall any privileged emails between the Defendant and his previous attorney. *See* Dkt. 506-

2, Dkt. 506-3, Dkt. 506-4, Dkt. 506-5. Moreover, when the Defendant claimed the device contained potentially privileged information, the Government instructed the prosecution team to delete all copies of the device or turn them over to the filter team. Dkt. 477-5. Once the Government discovered Douglas had tagged the privileged information during his review of the device, they immediately walled him off from the prosecution team. Dkt. 506-8.

The Defendant argues the Government's claim that they did not view the information lacks credibility. He notes that they had access to the device for at least four months, and Douglas must have reviewed the information to tag it as "of interest." However, the Government does not deny Douglas's review of the information. Instead, they acknowledged his review of privileged information and removed him from the prosecution team. Dkt. 506-8. Further, the Government having access to the evidence for four months does not automatically undermine their argument that no one else on the team reviewed the information. *See United States v. Guzman-Solis*, No. CR1404729001TUCKKJ, 2015 WL 13283396 (D. Ariz. Oct. 19, 2015), aff'd, 666 F. App'x 628 (9th Cir. 2016) (finding no prejudice where the prosecution had possession of a privileged attorney-client conversation for over five months because the prosecution contended no member of the team listened to the calls). As the Defendant has argued in previous motions, this case

MEMORANDUM DECISION AND ORDER - 8

contains a substantial amount of evidence. It is plausible each member of the prosecution team did not review and analyze every email in the 75 terabytes of information seized from the Defendants.

### 3.    Previous Attorney

Finally, the privileged communications at issue here are between the defendant and his previous attorney retained in a separate civil matter. "Government intrusions into pre-indictment attorney-client relationships do not implicate the Sixth Amendment." *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000). See also *Danielson*, 325 F.3d at 1066 (noting the government's use of an informant to obtain the defendant's statements regarding separate offenses for which he had not been indicted did not violate his Sixth Amendment rights); *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (rejecting the defendant's argument that the prosecution violated his Sixth Amendment rights by using documents obtained from his former attorney retained in a separate matter); *Smith*, 2014 WL 5543420 (finding no Sixth Amendment violation where the prosecution had access to emails between the defendant and his previous attorney over a year before he was indicted).

Here, the emails between the Defendant and his previous attorney retained during a Customs and Border Patrol proceeding are at issue. Dkt. 477-2. The Court

recognizes that, though it was a separate matter, the CBP proceeding and this criminal proceeding both involve the counterfeit nature of the cell phones sold by the Defendant. The Defendant contends the communications therefore contain a defense strategy relevant to the current indictment. Dkt. 477 at 18 ("The communications go to the heart of Mr. Babichenko's strategy for defending this case."). However, the Defendant's defense in the CBP matter was already revealed to the Government during the proceeding. *See* Dkt. 506-10. Thus, by indicating his trial strategy in the CPB proceeding mirrors his current trial strategy, the Defendant himself has revealed his defense. *See Irwin*, 612 F.2d at 1189 (finding no prejudice where the defendant already revealed the nature of his defense to the prosecution).

The Court finds the Government's declarations, the civil nature of the asserted attorney-client privilege, and the fact that the government was already aware of the Defendant's strategy in the CPB proceedings sufficiently proves the Government's non-use of any information contained in the privileged communications.

**B.    Fifth Amendment Violation**

The Defendant also invokes a Fifth Amendment violation. *See* Dkt. 543. To violate due process, governmental conduct must be "so grossly shocking and so

outrageous as to violate the universal sense of justice." *Barrera-Moreno*, 951 F.2d
at 1092. Courts find outrageous conduct only where the prosecution deliberately
intrudes on privileged information. *Compare United States v. Levy*, 577 F.2d 200
(3d Cir. 1978) (finding outrageous government conduct where the government
deliberately eavesdropped on attorney-client consultations), *with United States v.
Smith*, No. 13-CR-14-RMP-1, 2014 WL 5543420 (E.D. Wash. Oct. 31, 2014)
(finding the government did not act outrageously by possessing privileged emails
between the defendant and his previous attorney).

The Defendant's argue the Government's repeated review of privileged
material shows a disregard for the Defendants' rights. However, the Court finds the
Government's conduct is not outrageous or grossly shocking. The prosecution
removed the only tainted member of its team and deleted all copies of the
privileged information. Moreover, the Court has already implemented a filter team
and finds this safeguard sufficient to protect the Defendant's rights. Further, the
Court declines to exercise its supervisory power to dismiss the Superseding
Indictment.

## CONCLUSION

For the forgoing reasons, the Court will deny the Defendant's Motion to

**MEMORANDUM DECISION AND ORDER - 11**

Dismiss. The Court finds the filter team continues to sufficiently protect the Defendant from any privilege invasions.

Moreover, the Court declines the Defendant's request for further discovery into the Government's invasion of the Defendant's privileged communications because, as stated above, the Court finds on multiple grounds that the intrusion caused no Sixth Amendment violation. Even if further discovery suggests the prosecution intentionally seized privileged information, the Court finds the prosecution sufficiently proven non-use of that information.

The Court also declines the Defendant's request to suppress all CBP evidence. However, the Government will not be permitted to admit any privileged communications between the Defendant and his prior counsel regarding that proceeding at trial. Other non-privileged CBP evidence may be presented at trial, subject to objection.

Finally, the Court declines the Defendant's request to reassign the prosecution team. As stated above, only Douglas, who has since been removed from the team, viewed the privileged information. The other members of the prosecution team testified to their ignorance of the privileged communications in their declarations. Dkt. 506-2, Dkt. 506-3, Dkt. 506-4, Dkt. 506-5. The Court finds these measures adequately protect the Defendant's rights.

MEMORANDUM DECISION AND ORDER - 12

## ORDER

**IT IS ORDERED that** Defendant's Motion to Dismiss (Dkt. 477) is

**DENIED**.

DATED: August 3, 2020

B. Lynn Winmill
U.S. District Court Judge