UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00258-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| PIOTR BABICHENKO, | |
| Defendant. | |

**INTRODUCTION**

Before the Court is Defendant Piotr (Peter) Babichenko's motion to dismiss the conspiracy counts against him (Dkt 1273). The Government opposes the motion. For the reasons explained below, the Court will partially deny and partially reserve ruling on the motion.

**RELEVANT BACKGROUND**

Peter ultimately faced five charges at the first trial. Counts 1 and 20 alleged conspiracy to commit wire fraud and conspiracy to traffic in counterfeit goods, packing, or labels. *Verdict*, Dkt. 1151. Counts 10, 19, and 27—the substantive charges—alleged wire fraud, mail fraud, and trafficking in counterfeit goods with respect to the December 12, 2017 sale of a Samsung phone on Amazon.com. *Id.*

The jury could not reach a verdict as to the conspiracy counts, but acquitted

Peter of the three substantive counts. *Verdict*, Dkt. 1151. Peter now argues that by acquitting him on the substantive charges, the jury determined an issue of ultimate fact which protects him being retried for conspiracy under the doctrine of collateral estoppel.

## LEGAL STANDARD

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.

"The claim preclusion aspect of the Double Jeopardy Clause bars successive prosecutions for charges that are, for double jeopardy purposes, the same offense." *Lemke v. Ryan*, 719 F.3d 1093, 1099 (9th Cir. 2013) (citing *United States v. Dixon*, 509 U.S. 688, 696-98 (1993)). The Supreme Court has recognized "the rule that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389 (1992).

The issue preclusion, or collateral estoppel, aspect of double jeopardy "prevents the government from seeking to prosecute a defendant on an issue that has been determined in the defendant's favor in a prior prosecution, regardless of the particular offense involved in the earlier trial." *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007) (citing *Ashe v. Swenson*, 397 U.S. at 443). When evaluating a collateral estoppel claim, the Court follows a three-step analysis:

**ORDER - 2**

> First, we identify the issues in the two actions to determine whether they are sufficiently material and similar to justify invoking the doctrine; second, we examine the record in the prior case to determine whether the similar issue was litigated; third, we examine the record of the prior proceeding to determine whether the issue was necessarily decided in the first case.

*Sivak v. Hardison*, 658 F.3d 898, 918 (9th Cir. 2011).

To determine whether an issue was "necessarily decided" by the jury, the Court takes into account "the pleadings, evidence, charge, and other relevant matter, and conclude[s] whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 918-19 (internal quotations and citations omitted). If the Court concludes "there is more than one rational conclusion that can be drawn from the first jury's verdict, then collateral estoppel cannot apply because the issue was not necessarily decided by the jury's verdict." *Id.* at 919 (internal quotations and citations omitted). "The burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Id.* (internal citations and quotations omitted).

## ANALYSIS

Because *Felix* establishes that a substantive crime and a conspiracy to commit that crime are not the "same offense" for double jeopardy purposes, the question here is whether collateral estoppel precludes the Government from trying

ORDER - 3

Peter on the conspiracy counts once more. 503 U.S. at 389. The Court will approach the collateral estoppel inquiry in reverse order, beginning with the third step—whether the issue was necessarily decided.

In framing the issue, Peter rightly points out that in its order on his Rule 29 motion, the Court focused on evidence and argument that disproved direct liability. *See Order*, Dkt 1238 at 11. The Court did not address the aider and abettor or co-schemer theories of vicarious liability presented in the jury instructions, which the Court must assume the jury correctly applied. *See Pettaway v. Plummer*, 943 F.2d 1041, 1045-1046 (9th Cir. 1991). Peter argues that considering the verdict in light of those instructions, the jury made a necessary finding that "he lacked the requisite intent for vicarious liability" for the December 12, 2017 sale. *Def. Br.* at 17. Moreover, he contends that finding invokes the collateral estoppel doctrine because vicarious liability intent is "the same intent the Government would need to prove in a retrial on the conspiracy charges." *Id.*

The Court will turn first to the question of what findings the jury necessarily made to acquit Peter on the vicarious liability theories.

### A.   The Jury's Necessary Determinations

As the Court noted in its previous order, evidence at trial indicated that although Peter originally operated ReMobile, he "gave" the business to Tim in "early 2017," well before the December 12, 2017 undercover buy. *Order,* Dkt

1238 at 11. The Court observed that this evidence indicates that Tim, not Peter, was directly liable for the December 12 sale. *Id.*

In his motion, Peter argues that "[i]f the jury found those facts which the Court suggests, they would have convicted Peter on Counts 10, 19 and 27 under the aider and abettor theory of vicarious liability on all counts as well as the co-schemer theory of vicarious liability on the fraud counts" because "evidence that Peter 'gave' ReMobile to Tim and that ReMobile subsequently made an illicit sale via Amazon would be inculpatory evidence." *Def. Br.* Dkt 1273 at 11.

The Court disagrees with this interpretation of its findings. Peter's argument relies on the premise that the jury determined that the sale was illicit, and the only question was who was culpable. But the Court's previous order did not make that presumption. Rather, the Court suggested that whatever the criminal or non-criminal nature of the sale, Tim was directly liable.

Peter's broader argument suffers from the same shortcomings. The jury would only have reached the issue of intent if it had also found that wire fraud, mail fraud, or trafficking in counterfeit goods was committed by someone. Instruction No. 32 told the jury that "a defendant may be found guilty of wire fraud, mail fraud, or trafficking in counterfeit goods"—the substantive counts that Peter faced—by aiding and abetting if the government proved, among other required elements, that "*someone else committed wire fraud, mail fraud, or*

*trafficking in counterfeit goods.*" *Jury Instructions*, Dkt 1159 at 32 (emphasis added). Likewise, Instruction No. 29 told the jury that a defendant may "be guilty of *an offense committed by a co-schemer* in furtherance of the scheme," similarly requiring that the jury determine that an offense was committed. *Id.* at 38 (emphasis added).

In his motion, Peter does not address this point whatsoever. On that basis alone, the Court could conclude that Peter has not met his burden to show that the issue of intent was necessarily decided. Nevertheless, the Court will probe a bit deeper.

Based on the evidence at trial, a rational jury could have found reasonable doubt as to whether the goods involved in the December 12 sale, Exhibit 5007, were in fact counterfeit. In other words, a rational jury could have grounded its vicarious liability acquittal on an issue other than Peter's intent.

For instance, the Government's Samsung expert James Hogg testified about the goods involved in the December 12 sale, which were sold on Amazon as Samsung products. He explained that "I was able to evaluate the earbuds, the travel adapter, the battery and the device itself and the screen protector of the device. And I believe all of those things to be counterfeit." Trial Tr. Day 18, at 3015:05-07.

On cross-examination, however he agreed that his "conclusions are only as

good as the quality control by Samsung and its manufacturers." Trial Tr. Day 19, at

3270:14-23. Peter's counsel noted that although Mr. Hogg testified that Samsung

would not produce products in mass quantity with bad trademarks, misspellings, or

misprints, "Samsung mass-produced a large quantity of batteries that were so

defective and dangerous they were banned from airlines across the world." *Id.* at

3271:11-3272:10. This colloquy may have given rise to reasonable doubt that the

goods involved in the December 12 sale were counterfeit.

Alternatively, the jury may have given credit to Peter's theory of the case

that Amazon's "new category was the most appropriate category" to sell phones

like the one at issue in the December 12 sale. Trial Tr. Day 32, at 6080:17-18.

Peter testified that "Amazon basically had two batches of categories" for phones,

new and used, which each contained subcategories. *Id.* at 6078:25-6079:16. He

thought that "a repaired phone to a new condition" phone belonged "in the new

category" because of (1) Amazon's descriptions of the categories, *id.*, the close

match between Apple's and Samsung's description of a refurbished phone and

Amazon description of the new category, *id.* at 6080:1-6, and Amazon's

interchangeable use of the words "renewed" and "new," *id.* at 6080:7-11. In short,

the jury may have credited Peter's testimony that the December 12 sale was not a

crime.

Of course, the Court is not attempting to discern the jury's conclusions or

ORDER - 7

thought process.[1] Rather, the point is that Peter has not shown that the jury

necessarily reached the issue of intent when applying the vicarious liability

instructions. As such, Peter's motion to dismiss the conspiracy counts is denied.

### B.      Excluded Evidence

The final question for the Court, then, is what evidence must be excluded

from the retrial because of Peter's acquittal on the substantive counts. The Court

will reserve ruling on this question.

When Peter filed this motion, he also filed a motion to expedite the briefing

schedule. Dkt. 1274. Despite the Government's objection, Dkt. 1280, the Court

ordered expedited briefing, Dkt. 1281. The expedited briefing schedule provided

that Peter would need to file his optional reply by March 3, 2022. Instead, Peter

filed his reply on March 8. Dkt. 1301. In the reply, he largely argued that any

evidence related to acquitted substantive counts must be excluded in retrial.

The Court does not fault Peter for the late filing and understands that the

change in his representation likely contributed to the tardiness. However, in the

interest of fairness, particularly because the Court set the expedited briefing

---

[1] As a practical matter, the Court also notes that on each substantive count, the jury either hung or acquitted the charged defendant. Crediting Peter's argument would require that on this sole transaction, the jury reached the opposite conclusion, but nevertheless acquitted based on intent. Although that does not actually weigh into the Court's analysis and is certainly possible, it would be an anomaly inconsistent with the other aspects of the jury's decision.

schedule at Peter's request and over the Government's objection, the Court will not consider the reply brief at this time.

Instead, the Court will order supplemental briefing on the issue of what evidence, with particularity, the Court should exclude based on Peter's acquittal and the above discussion. Within fourteen days of this order, the Government shall file a supplemental brief on that issue. And Peter's optional reply shall be filed within seven days of the Government's response.

## ORDER

**IT IS ORDERED that**

1.    Defendant Piotr Babichenko's motion to dismiss conspiracy counts (Dkt. 1273) is **DENIED** in part. The Court reserves ruling on his request to exclude evidence of the sale. The Motion is denied in all other respects.

DATED: March 13, 2022

B. Lynn Winmill
U.S. District Court Judge