Mike French (ISB#8038)
BARTLETT & FRENCH PLLP
1002 W. Franklin St.
Boise, Idaho 83702
Phone: (208) 629-2311
Facsimile: (208) 629-2460
mike@bartlettfrench.com

Paul E. Riggins (ISB#5303)
RIGGINS LAW, P.A.
380 S. 4th Street, Suite 101
Boise, Idaho 83702
Phone: (208) 344-4152
rigginslaw@gmail.com

Attorneys for Defendant Piotr Babichenko

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| | CASE NO. CR-18-00258-BLW |
| vs. | |
| PAVEL BABICHENKO, PIOTR BABICHENKO, TIMOFEY BABICHENKO, DAVID BIBIKOV, MIKHAIL IYERUSALIMETS, | DEFENDANT PIOTR BABICHENKO'S MOTION FOR RELEASE PENDING APPEAL |
| Defendants. | |

## I. INTRODUCTION

Defendant Piotr Babichenko moves this Court, pursuant to 18 U.S.C. §3143, to order his release pending the appeal of the judgments entered in this case. Mr. Babichenko

has clearly established that he is not a flight risk or a danger to the community. He and Counsel assert that his appeal is not for purposes of delay. The only remaining question, then, is whether his appeal will present substantial questions of law or fact that are likely to result in reversal or a new trial. Mr. Babichenko meets that burden herein.

The following issues present substantial questions of law or fact that are likely to result in reversal or a new trial:

1. Whether the Court erred by precluding the Defendants' phone experts from testifying that the phones were authentic Apple and Samsung products.

2. Whether the Court abused its discretion by allowing the Government and its witnesses to repeatedly misuse the term "counterfeit" at trial.

3. Whether the Court erred by not instructing the jury on the repackaging defense under 18 U.S.C. §2320(g).

Notably, these issues turn on the interpretation of 18 U.S.C. §2320, and in particular the meaning of the term "counterfeit" defined in §2320(f)(1). Section 2320 is not frequently prosecuted by the Government or interpreted by the Circuit Courts. Less than eighty published Circuit Court decisions even cite to §2320, none appear to speak directly to the issues Mr. Babichenko identifies here, and few offer significant guidance. These novel issues are surely of more substance than would be necessary to a finding that they are not frivolous, and thus raise substantial questions for Mr. Babichenko's appeal. Further, each of these issues is of the type that is likely to result in a new trial if Mr. Babichenko were to prevail on their merits. Mr. Babichenko meets each of the requirements for release pending appeal. Based thereon, this Court should allow his continued release while he pursues his appeal.

The Court ordered Mr. Babichenko to self-surrender on a date to be determined by the Bureau of Prisons. He respectfully requests that the Court stay his surrender pending resolution of this motion and any appellate motions, if necessary.

## II.  LEGAL STANDARDS

A court may release a defendant pending appeal if it finds (1) the defendant does not pose a flight risk or a danger to the community, (2) the appeal is not for purpose of delay, and (3) the appeal will raise a substantial question of law or fact that, if resolved in the defendant's favor, is likely to result in a new trial. 18 U.S.C. §3143(b)(1). The Court must find the first factor by clear and convincing evidence, §3143(b)(1)(A), and the second by a preponderance of the evidence, *United States v. Affleck*, 765 F.2d 944, 953 n.15 (10th Cir. 1985). The third factor is a question of law. *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985).

Regarding the first element of the test, "the word 'substantial' defines the level of merit required in the question raised on appeal." *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985). A "substantial question" is "fairly debatable" or "'of more substance than would be necessary to a finding that it was not frivolous.'" *Id.* at 1283 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). Thus, a question may be substantial even if the court disagrees with the defendant's position. The inquiry is whether "there is a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possibly prevail." *Id.* at 1281 (quoting *Herzog v. United States*, 75 S. Ct. 349, 351 (1955) (Douglas, Circuit Justice)). A question may be substantial "if it is novel, or if there is a contrariety of views concerning it in the several circuits, or if the appellate court should give directions to its

district judges on the question, or if in the interests of the administration of justice some clarification of an existing rule should be made." *Id.* (quoting *Herzog*, 75 S. Ct. at 351).

As for the second part of the test, "the phrase 'likely to result in reversal' defines the type of question that must be presented." *Id*. A defendant meets that requirement if, *assuming* he prevails on the merits of the issue, reversal or a new trial is likely. *Id.* at 1283.

The third requirement of §3143(b)(1) initially appears to establish a demanding standard, akin to showing a likelihood of success on the merits. But the Ninth Circuit has taken a more liberal view, holding that a defendant satisfies §3143(b)(1) if his appeal will (1) raise a "fairly debatable" question, and (2) "if error is found[,] reversal is likely." *Id.* at 1283–84.

In short, a defendant seeking release pending appeal need not persuade the district court that its prior rulings were erroneous or that he will probably win his appeal. Instead, he must show only that his appeal presents fairly debatable issues that, if successful, are likely to result in reversal.

### III. ARGUMENT

**A. Mr. Babichenko's appeal presents substantial questions of law or fact that, if successful, will likely result in reversal.**

As the Court is aware, this complex case involved extensive pretrial litigation and two hard-fought trials involving numerous witnesses and hundreds of exhibits. Due to time constraints, counsel have not yet had the opportunity to conduct a thorough review of the massive record in this case, but they have thus far identified several appellate issues Mr. Babichenko may ultimately pursue on appeal. Each of those issues presents a substantial question of law or fact and is likely to result in a new trial if successful.

### 1. Testimony of the Defendants' Phone Experts

The Defendants sought to introduce at trial the testimony of two expert witnesses—Ben Levitan and Derek Ellington—to discuss the origin of the phones at issue in this case. Mr. Levitan is a cellular network and security expert, Dkts. 402, 732, while Mr. Ellington is a certified forensic examiner who analyzes and repairs cell phones in criminal and civil investigations, Dkts. 405, 786. Both experts would testify that the phones at issue in this case were genuine Apple and Samsung phones with some refurbished parts, and not phones made from whole cloth by someone other than Apple and Samsung. *See id.* Mr. Levitan opined as much because the phones met the technical parameters necessary to connect to the network, as only authentic phones could do. Dkt. 732 at 4–6. Mr. Ellington opined as much because the key components—which are so sophisticated that any non-authentic parts would stand out—were consistent with genuine Apple and Samsung components. Dkt. 874 at 4–5. In other words, these experts did not need to look at a superficial (and potentially misleading) mark on a given phone to determine who made it; they could tell as much by examining the phone itself.

This Court excluded much of expert testimony after concluding that the experts where qualified and their opinions were reliable, but that the testimony was not relevant. Dkt. 928 at 5, 6; *see also* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). It explained that "these experts' testimony does not seem particularly *relevant* to whether the phones in this case were 'genuine' under §2320(g)," *Id.* at 5 (emphasis added), and they did not "have much to offer with respect to the *trademark claims*. Both witnesses freely admit that they are not trademark experts." *Id.* at 6–7

(emphasis added). The Court therefore allowed the experts' testimony only as it related to the Defendants' mental state. *Id.*

          a.    **The Court's exclusion of the phone expert's testimony is a substantial question for appeal.**

It is "fairly debatable" whether the Court erred by precluding the phone experts from testifying that the phones—except for some easily interchangeable parts such as the backplate, screen, or battery—were authentic Apple and Samsung products. To begin, the paramount inquiry is not whether the experts' testimony is relevant to show the phones were "genuine" under §2320(g), but whether it is relevant to show that the goods were not "counterfeit" under §2320(a)(1) and (f)(1).[1] A good is "counterfeit" if it bears a "counterfeit mark." A counterfeit mark is "spurious," which, among other things, "is used in connection with trafficking in any goods," and "the use of which is likely to cause confusion, to cause mistake, or to deceive" regarding the origin of the good to which it is attached. §2320(f)(1); *see also Dreamworks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (the requisite confusion is about "the *origin* of the good . . . bearing one of the marks.") (emphasis added).

The crux of §2320, therefore, is that the mark must be likely to deceive regarding the *origin of the good* to which it is attached. Only a mismatch between the mark and the good at the time the mark was placed, such that the mark misrepresents the origin of the good, render the mark *and* the good counterfeit. And the jury must consider the mark and

---

[1] To be sure, the experts' testimony is also relevant to whether the phones are "genuine" under §2320(g). Section 2320(g) provides it is not a crime to repackage "genuine goods . . . not intended to deceive or confuse." Section 2320 does not define the term "genuine," but it is surely an antonym to "counterfeit"; if the good is not counterfeit under §2320(a)(1) and (f)(1), then it is genuine under §2320(g) and may be lawfully repackaged by non-mark holders.

the good together to determine whether the mark and good are counterfeit. If the mark—even a "fake" mark—correctly identifies the origin of the good to which it is attached, then neither the mark or the good are "counterfeit."

Within this legal framework, the question for the jury in this case boiled down to this: Is an otherwise genuine (*i.e.*, made by Apple) iPhone "counterfeit" if it has a refurbished or aftermarket backplate, screen, or battery that bears an Apple mark? Using the definitions in §2320(a)(1) and (f)(1), the jury could reasonably conclude that an Apple mark on an after-market backplate correctly identified the origin of the phone (Apple) and thus the phone was not counterfeit, *even if* the mark incorrectly identified the origin of the backplate (not Apple). The phone experts' testimony was directly relevant to that analysis because it would have informed the jury regarding the *origin* of the phones and supported the Defendants' theory of the case; that they sold genuine, refurbished phones.

Therefore, at a minimum, it is fairly debatable whether the experts' testimony regarding the origin of the phones was relevant to determine the Defendants' guilt for trafficking in counterfeit goods under §2320. This issue is novel and "of more substance than would be necessary to a finding that it was not frivolous," and thus presents a substantial question for appeal. *See Handy*, 761 F.2d at 1283.

      **b.**  **If successful on appeal, the Court's erroneous exclusion of the phone expert's testimony will likely result in a new trial.**

The central question on each charge in this case was whether the phones Mr. Babichenko sold were counterfeit because the mark incorrectly identified the origin of the good to which it was attached. But Mr. Babichenko was unable to present to the jury the most relevant and persuasive evidence—reliable testimony from qualified experts—

that the phones were in fact made by Apple and Samsung, and then refurbished with, at most, a handful of aftermarket parts. This is the type of error that would likely result in a new trial, *see United States v. Lopez*, 913 F.3d 807, 825 (9th Cir. 2019) and *United States v. Seschillie*, 310 F.3d 1208, 1215 (9th Cir. 2002) (requiring reversal unless the Government proves it is more probable than not that the error did not materially affect the verdict); *Handy*, 761 F.2d at 1281, 1283.

### 2. Misuse of "Counterfeit"

After the second trial, during which the Government and its witnesses incessantly misused the term "counterfeit," the Defendants renewed their request that the Court limit the misuse of the term "counterfeit" mark as a synonym for "fake" mark. *See* Dkts. 1337, 1389. The Court denied that motion. Dkt. 1422. It acknowledged that the Government's use of the term "counterfeit" was inconsistent with §2320, but said it was impractical to preclude the Government and its witnesses from using that term. *Id.* at 7–8. Instead, it counseled the Government to use the term "sparingly," and indicated it would give the jury a cautionary instruction if necessary. *Id.* at 8.

The Government and its witnesses once again misused the term "counterfeit" as a synonym for "fake" throughout the second trial. *See, e.g.*, Trial 2 Tr., 2711:8–9 (the Government asking, "is this a genuine mark or a counterfeit mark?" and Mr. Hogg responding, "this is a counterfeit mark that's shown in red."), 2974:8–10 (Ms. Caras testifying that an incorrect trademark tells her "that it was a counterfeit product"). During the brand representatives' testimony, the Government, Mr. Hogg, and Ms. Caras misused the term upwards of eighty times. *See generally* Trial 2 Tr., 2689–3103. The Court gave a couple of cautionary instructions, which reminded the jury that the Government's use of

the term "may or may not" be consistent with the definition it would instruct the jury to apply at the end of the trial. Trial 2 Tr., 2722:16–2723:15, 2977:23–2978:5. But then the Government reminded the jury in closing that the brand representatives determined that over ninety percent of the items they reviewed were "counterfeit" and that they were the ones "with specialized knowledge" and "know their products better than anyone else." Trial 2 Tr., 5577:23–5578:10; *see also* Trial 2 Tr., 5848:2–4 (the Government telling the jury in closing that, "[t]he testimony from the brand representatives establish each one of the five elements contained in the definition of what is a counterfeit mark.").

> **a. Whether the Court abused its discretion by allowing the Government and its witnesses to repeatedly misuse the term "counterfeit" is a substantial question.**

For at least four reasons, it is "fairly debatable" whether the Court abused its discretion by allowing the Government and its witnesses to misuse the term "counterfeit" at trial. To begin, the Government and its witnesses' use of the term "counterfeit" is incompatible with the law. Describing either a mark or a good on its own as "counterfeit," or using the term "counterfeit" as a synonym for "fake" is squarely at odds with §2320. The term "counterfeit" under §2320 requires a comparison of the mark and the good to determine whether the mark correctly identifies the origin of the good to which it is attached. §2320(a)(1), (f)(1)(A). And a fake mark, if it correctly identifies the origin of the good to which it is attached, is not a "counterfeit' one. §2320(a)(1), (f)(1)(A).

Second, the Government's witnesses should not have drawn the legal conclusion that a mark or good is "counterfeit" because that determination is solely the province of the jury. *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an

opinion on an ultimate issue of law," and "instructing the jury as to the applicable law is the distinct and exclusive province of the court.") (quoting *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1016 (9th Cir. 2004)); *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) ("[E]xpert testimony should not "invade[] the province of the jury.") (brackets in original); Fed. R. Evid. 701–702.

Third, the Government and its witnesses did not need to use the term "counterfeit" at all. They could have and should have referred to a mark or good using terms such as "non-genuine," "inauthentic," "fake" "not real," or "knock-off." Those terms, unlike the term "counterfeit, actually convey the meaning intended by the Government and its witnesses, do not misstate the law, and do not infringe upon the role of the jury.

Finally, the Government's *ad nauseum* misuse of the term "counterfeit" was misleading, prejudicial, and denied the Defendants a fair trial. The Government relied on the brand representatives—their "trademark experts"—to testify that the marks or goods at issue in this case were "counterfeit," using a definition that was *absolutely* at odds with §2320. And the Government leaned into that testimony in closing, reminding the jury that "the experts" concluded that essentially everything in the case was counterfeit. *See, e.g.*, Trial 2 Tr., 5577:23–5578:10. The Government therefore lowered its burden by misstating the law and bombarded the jury with "expert opinions" on the most elemental conclusion reserved for the jury.

Whether the Court should have precluded the Government from misusing the term "counterfeit" at trial is of more substance than would be necessary to a finding that it was not frivolous, and thus is at the very least a "fairly debatable" substantial question for appeal. *See Handy*, 761 F.2d at 1283.

      **b.      If successful on appeal, the Court's refusal to preclude the Government's and its witnesses incessant misuse of the term "counterfeit" will likely result in a new trial.**

Again, the central question for the jury to decide on each charge in this case was whether the phones Mr. Babichenko sold were "counterfeit." Yet the Government was allowed to present argument and "expert" testimony that both used that term incorrectly and drew the ultimate legal conclusion that was reserved for the jury. The Court told the jury only twice that the Government's use of the term may or may not be consistent with the definition it would give the jury at the end of the trial, Trial 2 Tr., 2722:16–2723:15, 2977:23–2978:5, and in closing the Government told the jury that the brand experts' testimony conclusively showed the goods were "counterfeit," Trial 2 Tr., 5577:23–5578:10; Trial 2 Tr., 5848:2–4. These circumstances rendered the Defendants' trial fundamentally unfair. *See* U.S. CONST. amends. V, VI; *see generally Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This is the type of error that, if found on appeal, would likely result in a new trial. *See Chapman v. California*, 386 U.S. 18, 23–24 (1967) (constitutional error is harmless only when the government proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"); *Handy*, 761 F.2d at 1281, 1283.

      **3.      Repackaging Defense**

Consistent with § 2320(g), the Defendants requested that the Court instruct the jury as follows:

> If you find that a Count involves what is otherwise a counterfeit mark used on or in connection with the repackaging of a genuine good, you must return a verdict of not guilty unless the government also proves beyond a reasonable doubt the defendant used the mark with the intent to deceive or confuse regarding the origin of the good.

Dkt. 1363 at 9, 12, 17; *see also* Dkt. 1398 at 7–9; Trial 2 Tr., 5486:16–17, 5486:25. The Court rejected the Defendants' proposed repackaging instruction without explanation. Trial 2 Tr., 5488:21–5489:2. But its earlier comments on related issues suggest it believed that used or refurbished phones could not be "genuine" under § 2320(g). *See, e.g.*, Dkt. 928 at 7 ("refurbished or rebuilt phones aren't 'genuine' phones within the meaning of §2320(g)").

    a.  **Whether the Court erred by not instructing the jury on the repackaging defense raises a substantial question.**

The Court's decision not to instruct the jury on the repackaging defense presents substantial questions because it involves "novel and not readily answerable" legal issues and that are not yet decided by controlling precedent. *See Handy*, 761 F.2d at 1281, 1283. It is it is therefore "fairly debatable" whether the Court erred by not giving the instruction.

First, the instruction correctly stated the law. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051 (9th Cir. 1998). Subsection 2320(g) provides: "[n]othing in this section shall entitle the United States to bring a criminal cause of action under this section for the repackaging of genuine goods or services not intended to deceive or confuse." Subsection 2320(g) was enacted alongside §2320(a)(2), which criminalized trafficking in counterfeit labels and packaging separate from goods, to ensure that legitimate parallel markets were not stifled. *See* 152 Cong. Rec. H593-01, H595, 2006 WL 544047. Thus, §2320(g) recognizes that the use of what would otherwise be a counterfeit mark in repackaging genuine goods is not a crime, so long as the defendant did not intend to deceive or confuse regarding the good's origin.

Second, the Defendants' requested instruction was necessary to adequately cover the issues in this case. *See Kendall-Jackson Winery*, 150 F.3d at 1051. For the instruction

to be necessary, there needed to be evidence from which the jury could conclude that a Defendant either (1) repackaged a genuine good or (2) trafficked in packaging that he or she intended to use to repackage a genuine good. And there was such evidence presented at the trial in this case. *See, e.g.*, Trial 2 Tr., 5050:19–22 (Mr. Babichenko testifying he did not sell counterfeit products), 5194:22–5197:22 (Mr. Babichenko testifying about purchasing boxes and labels which he used to package phones).

Despite this, the Court rejected the Defendants' requested repackaging instruction, apparently because it believed refurbished goods cannot be "genuine." *See* Dkt. 928 at 7. That conclusion is at odds with the plain language of §2320, infringed upon the role of the jury, and decided a novel issue without controlling precedent. Importantly, neither §2320 generally, nor §2320(g) specifically, say anything about goods being new, used, or refurbished; the only requirement is that the goods be "genuine." The requisite intent to deceive or confuse is likewise regarding the origin of the goods, not whether they are new, used, or refurbished. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020) ("Section 1114 [of the Lanham Act] was intended to protect consumers against deceptive designations of the origin of goods, not just to prevent the duplication of trademark.") (internal citation and quotation marks omitted); *Dreamworks*, 142 F.3d at 1129 ("The test for likelihood of confusion [under the Lanham Act] is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the *origin of the good* or service bearing one of the marks.") (emphasis added). Thus, at the very least, it is fairly debatable whether the Court erred by rejecting the Defendants' repackaging instruction. *See Handy*, 761 F.2d at 1281, 1283.

      **b.      If successful on appeal, the Court's refusal to instruct the jury on the repackaging defense will likely result in a new trial.**

The Defendants' requested repackaging instruction pursuant to §2320(g) implicates the Defendants' rights to a fair trial and to present a complete defense. *See* U.S. CONST. amends. V, VI; *Crane*, 476 U.S. at 690. Indeed, without that instruction, the jury may have found Mr. Babichenko guilty of something that is explicitly not a crime. This is the type of error that, if found on appeal, would likely result in a new trial. *See Chapman*, 386 U.S. at 23–24; *Handy*, 761 F.2d at 1281, 1283.

**B.     Mr. Babichenko is not a flight risk or a danger to the community.**

Mr. Babichenko has clearly and convincingly established that he is neither a flight risk nor a danger to the community. §3143(b)(1)(A). The Court ordered Mr. Babichenko's pretrial release in August 2018, a few days after his arrest. *See* Dkt. 294; § 3142 (considerations for pretrial release include safety of the community and whether the defendant will appear at hearings). Mr. Babichenko has remained out of custody since that time, approximately four and a half years ago.

After the jury returned its guilty verdicts, the Court allowed Mr. Babichenko's continued release pending sentencing. Trial 2 Tr., 5931:6–8; §3143(a)(1) (court may not release a defendant post-guilt unless it finds clear and convincing evidence that release will pose neither a danger nor a flight risk). Notably, the Government did not object. Trial 2 Tr., 5931:6–8. Thus, this Court has already found that Mr. Babichenko clearly and convincingly posed neither a flight risk nor a danger.

Nothing has changed since then to warrant revisiting that decision. Mr. Babichenko has complied with all conditions of his release. He has no other criminal history or history

of violence. His passport was surrendered to Pre-Trial Services on August 30, 2018. His life has been for decades, and continues to be, anchored here in the Treasure Valley; his church, job, extended family, wife, and children are all here. As he has done for the last four plus years, he intends to continue to fight to prove his innocence, something he would not be able to do as a fugitive. Mr. Babichenko is neither a flight risk nor a danger to the community.

### C. Mr. Babichenko's appeal is not for purposes of delay.

Mr. Babichenko's counsel certify that this appeal is not for purposes of delay. Mr. Babichenko intends to appeal to vindicate his rights, vacate his convictions, and obtain a new trial. The fact that the appeal will likely address the significant and novel questions discussed above shows that it is brought in good faith and not to delay.

### D. The Court Should Stay Surrender Pending Resolution of This Motion and Any Appellate Motion, If Necessary.

At sentencing, the Court ordered that Mr. Babichenko's self-surrender on a date to be determined but presumably in the very near future. In light of this pending motion, Mr. Babichenko respectfully requests that the Court stay his surrender at least until it is able to resolve this motion. Should the Court deny this motion, Mr. Babichenko intends to promptly move the Ninth Circuit for release pending appeal. *See* Fed. R. App. P. 9(b). The filing of a motion in the Court of Appeals stays a defendant's surrender until that Court can resolve his appellate motion. 9th Cir. R. 9-1(e) ("If the appellant is on bail at the time the motion is filed in this Court, that bail will remain in effect until the Court rules on the motion.").

Although this stay is imposed automatically by operation of law, Mr. Babichenko requests that the Court acknowledge and impose the stay for the avoidance of any doubt.

*See, e.g., United States v. Fuentes*, 946 F.2d 621, 622 (9th Cir. 1991); *United States v. Kakkar*, No. 5:13-cr-00736-EJD, 2017 WL 4163291, at *1 (N.D. Cal. Sept. 20, 2017).

## IV. CONCLUSION

Because Mr. Babichenko meets the requirements of §3143(b)(1), he respectfully requests that the Court grant his motion for release pending appeal.


RESPECTFULLY SUBMITTED this 27th day of March, 2023.

        RIGGINS LAW, P.A.

        /s/ Paul E. Riggins
        PAUL E. RIGGINS


        BARLETT & FRENCH PLLP

        /s/ Mike French
        MIKE FRENCH

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of March, 2023 I filed the foregoing document utilizing the Court's electronic CM/ECF system, which caused a Notice of Electronic Filing to be served on the following via email:

| | |
|---|---|
| Melissa D. Winberg<br>Nicole Owens<br>Federal Defender Services of Idaho<br>702 West Idaho Street, Suite 1000<br>Boise, ID  83702<br>Melissa_winberg@fd.org<br>Nicole_Owens@fd.org<br><br>Katherine L. Horwitz<br>Christian S. Nafzger<br>Justin D. Whatcott<br>Office of the United States Attorney<br>1290 W. Myrtle Street, Ste. 500<br>Boise, ID  83702<br>kate.horwitz@usdoj.gov<br>christian.nafzger@usdoj.gov<br>justin.whatcott@usdoj.gov<br><br>John C. DeFranco<br>Ellsworth, Kallas & DeFranco, PLLC<br>1031 E. Park Blvd.<br>Boise, ID  83712<br>jcd@greyhawklaw.com<br>Barry L. Flegenheimer<br>barrylfp@gmail.com<br><br>Jeffrey E. Brownson<br>Law Offices of Jeffrey Brownson<br>223 N. 6th Street, Ste. 215<br>Boise ID  83702<br>jb@jeffreybrownsonlaw.com<br><br>Rob S. Lewis<br>913 River Street, Ste. 430<br>Boise, ID  83702<br>office@roblewislaw.com | Greg S. Silvey<br>Silvey Law Office, Ltd.<br>PO Box 5501<br>Boise, ID  83705<br>greg@idahoappeals.com<br>Jay J. Kiiha<br>jay@kiiha.com<br><br>J.D. Merris<br>671 E. Riverpark Lane, Ste. 210<br>Boise, ID  83706<br>jmerris@earthlink.net<br><br>Robyn A. Fyffe<br>Fyffe Law LLC<br>PO Box 5681<br>Boise, ID  83705<br>robyn@fyffelaw.com<br>Brian Pugh<br>Brian_pugh@fd.org<br><br>Ellen N. Horras-Smith<br>5561 N. Glenwood St.<br>Boise, ID  83714<br>Ellen@smithhorras.com<br>Craig Durham<br>chd@fergusondurham.com<br><br>Thomas Dominick<br>Dominick Law Offices<br>500 W. Bannock Street<br>Boise, ID 83702<br>tom@dominicklawoffices.com |

/s/ Paul E. Riggins
PAUL E. RIGGINS